The action stood continued nisi for advisement, and at the following March term in Suffolk, the opinion of the Court was delivered as follows by
Sedgwick, J.
On the 30th of March, 1808, James Davis, by a deed of indenture with John Davis, bound his son Stephen Davis to John, from that time until he should arrive at the age of twenty one years.
On the 20th of July, 1809, John Davis, the master, who is the plaintiff in this action, entered into articles of agreement, but not sealed, with the defendant, whereby the plaintiff undertook to sell to the defendant the remaining time of the apprentice, being then three years.
In the indenture of apprenticeship, the plaintiff, among other covenants, undertook “ to use the utmost of his endeavors to teach, or cause to be taught and instructed, the said apprentice in the art and mystery of a house joiner, if the said apprentice be capable of learning with reasonable pains being taken.” In the articles of agreement entered into between the plaintiff and the defendant, the latter, among other things, undertook “ to teach or instruct or to cause the apprentice to be instructed in his art or trade of carpenter and joiner’s work.” The plaintiff relinquished all claim to the apprentice during the term of apprenticeship, at Cobum’s risk of sickness or absconding. In consideration of this, Coburn undertook to pay to .the plaintiff one hundred and fifty dollars by three equal instalments ; the first on demand, the second in one year, and the last at the expiration of the apprenticeship.
*The first payment was made soon after; and the apprentice absconded from Cobum on the 7th of July, 1810, that is, in thirteen days less than a year from the time of entering into the agreement; so that the defendant has actually paid, for the service performed by the apprentice, beyond the rate at which the value of his services was computed by the parties.
The general question is, whether the defendant is bound by his agreement to pay the remaining hundred dollars; — and as he assumed the- risk of the absconding of the apprentice, that question depends upon this, viz., whether there was a good and lawful consideration for the' undertaking of the defendant.
The original contract, by which Stephen Davis was bound by his *258 father an apprentice to the plaintiff, was entered into in the state of New Hampshire; and I assume it as true, that, by the laws of that state, a father has a right to bind his son an apprentice, in the manner it was done in this case. If that is not true, there can be no pretence for maintaining this action; for it would be a gross violation of natural justice, moral obligation, and personal liberty, for a man, having no lawful authority, to sell a human being; and such a contract certainly could not be enforced in a court of justice. Supposing, then, that, by the indenture between the father and the plaintiff, this latter acquired a property in the services of the apprentice ; was it a property which he could assign to a stranger ?
That a father, during the minority of a child, should have a power to dispose of a requisite portion of his authority, for the purposes of education and instruction, is frequently important and necessary to the welfare of the child; but in doing this, a due regard to the interest of his child will render him cautious to what hands he confides the trust; and for this purpose a wise and prudent parent will -be as anxious about the moral qualities of the man, to whom he delegates his authority, as to his competency in other respects. But all his attention in this regard would be use- * less, if the master might immediately transfer or assign his authority to another; not merely within the limits of the state to which he belongs, but, as was the case here, into another independent jurisdiction. And if he could transfer him into Massachusetts, I see not why he might not have sent him to Georgia, or even to China. That a master should have such a legal authority would be monstrous; and if he have' it not, to exercise it is a violation of natural right, and immoral, and consequently can be no good consideration for the support of an action. But the decision of the question does not now depend upon reason alone. . It has long been determined by authority.
There is a solitary case, (10) in which it has been determined that an action lay against executors on a covenant of apprenticeship entered into by the testator; but this was overruled and denied to be law in the case of Baxter vs. Burfield, cited at the bar. In the case of Bedell vs. Constable, (11) in considering the statute of 12 Car. 2, c. 24, authorizing parents to appoint guardians for their children, it was decided that such a special guardian cannot assign the custody of the ward, by deed or will, to any other person; and the reason given is, because it is a personal trust, which can never be transferred, whether the appointment be by the act of law or of an individual. And it is there truly said, that “ a more near or tender *259 trust cannot be, than the custody and education of a man’s child.” — In the case of Coventry and Woodhall, (12) the action was brought on a deed, in which the defendant had covenanted, under a penalty, to instruct his apprentice in the art of surgery; and the breach assigned was, that he had sent him out of the realm to Bantam, in the East Indies. The defendant pleaded, that he had sent him out with expert surgeons, the better to learn the art. To this plea there was a demurrer, on which the plaintiff had judgment, because the trust was personal. In the -case of The King vs. The Inhabitants of Stockland, (13) it is admitted that an apprentice ship is not assignable nor transmissible. And in the * case of Hall & Al. vs. Gardner & Al., also cited at the bar, this Court determined that an apprenticeship cannot be assigned, the master having amere personal trust. Many more authorities might be mentioned ; and it may be added that the principle is affirmed by many approved commentators, and, I believe, denied by none.
If an apprenticeship is not assignable, it follows that the transfer by the plaintiff to the defendant, in breach of the personal trust confided to him by the father, was a wrong inflicted on the apprentice, and did not confer on the defendant any authority nor any right to the services of the apprentice. It was, in fact, a mere act of unauthorized power; and admitting that in this the parties were in pari delicto, the maxim applies, Melior est conditio defendentis.
But the case of Castor vs. Aicles, which is reported by Salkeld and Lord Raymond, and some other cases, were cited in the argument, to prove that an apprentice bound to a master in one parish, and by him assigned to a man living in another, if he resides the requisite period of time with the latter, acquires a settlement in his parish, as having served an apprenticeship there. There are many cases to this effect. (14) From them it was intended that it should be inferred, that such an assignment is not merely inoperative and void. I confess myself unable, after much consideration, to extract any consistent principle from those cases. There are several of them, which contain, to my mind, much loose and unintelligible declamation. It is not, however, necessary to énter into a minute discussion of them, as it is a sufficient answer to their intended application, to observe that they are irrelevant to any question presented by the case under consideration; their united authority, as to the point adjudged, going no further than to establish this *260 position, — that a service de facto, in consequence of an assignment of an apprenticeship, will bring the pauper, who has so served, within the true intent and meaning of the acts of parliament, so as to give him a settlement where such service is performed, (a)

Plaintiff nonsuit.

 Lev. 177.

 Vaugh. 177.

 Hob. 134.

 Doug. 69.

 Strange, 10, Parishes of Holy Trinity and Shoreditch. — Ibid. 1001, Parishes of St. George's Square and St. James's, Westminster. — Ibid. 1115, The King vs. The In, habitants of East Bridgeford. — 1 W. Black. 635. — Doug. 69.

 [See Dickenson's Guide to Quarter Sessions, by Serj. TaJfourd, pp. 696—788, and cases there cited. — Ed.]